## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| LAKESIHA THOMPSON, parent and next friend of H.L.T., a minor; and CHRYSTAL JENKINS, parent and next friend of P.J., a minor, )<br>)<br>)<br>)<br>) | |
| Plaintiffs, ) | |
| v. ) | Case No. CIV-23-00411-JD |
| ) | |
| GREG HENKE; and INDEPENDENT SCHOOL DISTRICT NO. 52, Oklahoma County, Oklahoma, also known as Mid-Del School District, )<br>)<br>)<br>)<br>) | |
| Defendants. ) | |

## <u>ORDER</u>

Before the Court is the Motion to Dismiss Plaintiffs' Second Amended Complaint ("Motion") filed by Defendant Independent School District No. 52, Oklahoma County, Oklahoma, also known as Mid-Del School District ("the District"). [Doc. No. 48]. The District moves to dismiss Plaintiffs Lakesiha Thompson and Chrystal Jenkins's Second Amended Complaint ("SAC") [Doc. No. 33] under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Plaintiffs filed a response in opposition ("Response") [Doc. No. 52] to which the District replied [Doc. No. 53].[1] For the reasons stated below, the Court grants the Motion in part, dismisses the federal claims against the District, and declines to exercise supplemental jurisdiction over Plaintiffs' state-law claims.

---

[1] In citing the parties' briefing in this order, the Court uses page numbering from the CM/ECF stamp across the top of district court docket filings.

## I.    <u>BACKGROUND</u>

This case arises from Defendant Greg Henke's horrific sexual abuse and exploitation of Plaintiffs' minor children, H.L.T. and P.J. Accepting as true the well-pleaded facts in the SAC, H.L.T. and P.J. were born with severe learning disabilities; both children are "classified as 'non-verbal.'" SAC ¶¶ 1–2, 13–14. H.L.T. and P.J. attended Highland Park Elementary School, which is a school within the District, and they were in a class with six or seven other students with special needs. *Id.* ¶¶ 12, 15–16, 24.

From approximately 2019 to 2021, Defendant Henke was a paraprofessional or teacher's aide for the District, and he was assigned to work in H.L.T. and P.J.'s class. *Id.* ¶¶ 12, 15. Henke's position provided him "unfettered, unsupervised access to these students," and he used this access to repeatedly sexually abuse H.L.T. and P.J., capture the abuse on his cell phone, and produce child pornography. *Id.* ¶¶ 16, 25. Henke abused these children—who were approximately seven to ten years old at the time—at school during school hours. *Id.* ¶¶ 16, 20–21. Plaintiffs allege that "Henke specifically targeted H.L.T., P.J., and similar children because of their disabilities," as he knew they "had no ability to defend themselves, no ability to adequately comprehend (much less consent) to what was happening to them, and no ability to verbalize these horrors to the outside world." *Id.* ¶ 22.

Defendant Henke is currently serving a 45-year federal sentence for possession of material containing child pornography and sexual exploitation of a child. *Id.* ¶¶ 42–43; *see also United States v. Henke*, CR-21-00137-HE (W.D. Okla.), Doc. Nos. 36, 78. Henke was arrested by federal agents on May 13, 2021, after he met with an undercover

agent to attempt to engage in sexual activities with minors. SAC ¶ 39. He pleaded guilty

and was later sentenced on December 21, 2022. *Id.* ¶¶ 42–43. At Henke's sentencing

hearing, the government noted that Henke had sexually abused other minors from 2002 to

2021, including one "young girl" with "a degenerative brain disease that took away her

mental capabilities and eventually her life." *Id.* ¶¶ 45–46.

Plaintiffs allege that various actions and inactions of the District led to H.L.T. and

P.J.'s abuse. They allege that the District "had a policy/custom of leaving

paraprofessionals or teacher aides alone and unsupervised with disabled students for

extended periods, which allowed Defendant Henke to sexually abuse and exploit them on

multiple occasions." *Id.* ¶ 26. "Henke was allowed to escort and supervise female

students to and in the bathroom, which was outside and away from their classroom,"

despite the fact that Plaintiff Thompson had indicated on a form that she only wanted

females to escort her daughter to the bathroom. *Id.* ¶¶ 27–28. In addition, Plaintiffs allege

that Defendant Henke "likely used the School District's internet or information

technology ('IT') to convey the pornographic material he produced," and if the District

had properly implemented and enforced an internet safety policy, "it would have received

an automated report of improper conduct and been required to take appropriate action."

*Id.* ¶¶ 37–38.

Furthermore, Plaintiffs allege that the District "had reason to know" of H.L.T. and

P.J.'s abuse because of changes in P.J.'s behavior. *Id.* ¶¶ 29–30. After Defendant Henke

was assigned to her classroom, P.J. "started acting out and exhibiting signs that she no

longer wanted to go to school." *Id.* ¶ 30. She regressed in her schoolwork, began

exhibiting inappropriate sexual behaviors, and would scream for hours on end. *Id.* School employees had to drag her into school, and sometimes she could only last at school for 30 minutes to an hour before her mother would have to pick her up. *Id.* P.J. "self-soothed through water therapy," which "became so extensive" during the period of Henke's abuse that P.J. would take "up to 20 baths per day." *Id.* ¶ 31. One morning in September 2021, she "was so frustrated that she ran straight into a wall, putting her head through the wall." *Id.* P.J.'s behavioral changes allegedly put the District on notice that H.L.T. and P.J. were being abused because "[a] person properly trained in how to address and communicate with non-verbal students with learning disabilities would have seen these behavioral changes as a cry for help, would have had reason to believe that the student was experiencing trauma, and would have properly investigated/reported to authorities." *Id.* ¶¶ 33–34. Moreover, Plaintiffs quote Henke as stating that "his co-workers were present and witnessed 'inappropriate behavior . . . going on.'" *Id.* ¶ 35.

Plaintiff Thompson originally sued Defendant Henke and the District in state court. *See* [Doc. No. 1-1]. The District removed the action to this Court. [Doc. No. 1]. Plaintiff Thompson later "uncovered additional information" that eventually led to the addition of Plaintiff Jenkins as a party to this action. [Doc. No. 23 at 1].

Plaintiffs raise two federal claims against the District only: one under 42 U.S.C. § 1983 alleging violations of the Due Process and Equal Protection Clauses of the Fourteenth Amendment, the other under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 et seq. SAC ¶¶ 50–83. Plaintiffs also raise tort claims against the District, advancing theories of negligent hiring, training, retention, supervision, and

implementation and enforcement of procedures, as well as negligence per se. *Id.* ¶¶ 85–99. In addition, Plaintiffs bring a claim under the Oklahoma Constitution,[2] and they raise several intentional tort claims against Defendant Henke.[3] SAC ¶¶ 101–10. For relief, Plaintiffs request compensatory and punitive damages, attorneys' fees and costs, pre- and post-judgment interest, and "any other relief as the Court or jury deems just and equitable." *Id.* ¶ 112.

## II.    <u>**LEGAL STANDARDS**</u>[4]

"To survive a motion to dismiss" under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Under this standard, the Court accepts all well-pleaded facts as true and views them in the light most favorable to the nonmoving party.

---

[2] Although the SAC is unclear, Plaintiffs state in their Response that they bring the claim under the Oklahoma Constitution against the District. *See* Response at 30.

[3] Plaintiffs filed a return of summons on Defendant Henke, *see* [Doc. No. 1-3], but Henke has not appeared or filed an answer or responsive pleading. Plaintiffs have not yet pursued a default against Defendant Henke.

[4] The District argues that Plaintiff Jenkins's claims should be dismissed under Rule 12(b)(1) "because Jenkins did not comply with the controlling statutes of limitation for the causes of action she asserts." Motion at 8. However, the statute of limitations is an affirmative defense, not a jurisdictional issue. *See* Fed. R. Civ. P. 8(c)(1). Because the District has not asserted any arguments regarding whether the statutes of limitations it raises are jurisdictional, the Court examines this issue under Rule 12(b)(6).

*Peterson v. Grisham*, 594 F.3d 723, 727 (10th Cir. 2010). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and the Court must "draw on its judicial experience and common sense" to determine whether a complaint states a plausible claim for relief. *Iqbal*, 556 U.S. at 678–79. "In other words, dismissal under Rule 12(b)(6) is appropriate if the complaint alone is legally insufficient to state a claim." *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1104–05 (10th Cir. 2017).

## III.    ANALYSIS

The District moves to dismiss the SAC on several grounds. Regarding the federal claims, the District argues that Plaintiff Jenkins's claims are time-barred, the SAC fails to state a claim for municipal liability under § 1983, and Plaintiffs have not stated a plausible claim under Title IX. For the state-law claims, the District argues that Plaintiffs have not sufficiently alleged compliance with Oklahoma's Governmental Tort Claims Act ("GTCA"), Jenkins's claims are time-barred, the District is immune from Plaintiffs' negligence claims under the GTCA, and Plaintiffs have failed to state a claim for negligence, negligence per se, or a violation of the Oklahoma Constitution.

### A.    Plaintiff Jenkins's federal claims are not barred by the statute of limitations at the pleading stage.

Federal statutory law does not provide an express statute of limitations for claims brought under § 1983 or Title IX. "When Congress has not established a time limitation for a federal cause of action, the settled practice has been to adopt a local time limitation as federal law if it is not inconsistent with federal law or policy to do so." *Wilson v.*

6

*Garcia*, 471 U.S. 261, 266–67 (1985). For § 1983 claims, the appropriate local time

limitation is Oklahoma's "two-year limitation for 'an action for injury to the rights of

another.'" *Meade v. Grubbs*, 841 F.2d 1512, 1523 (10th Cir. 1988) (quoting 12 Okla. Stat.

§ 95(A)(3)), *abrogated on other grounds by Schneider v. City of Grand Junction Police*

*Dep't*, 717 F.3d 760 (10th Cir. 2013). Because "the same state statutes [of limitations] that

apply to § 1983 claims" apply to Title IX claims, *Varnell v. Dora Consol. Sch. Dist.*, 756

F.3d 1208, 1213 (10th Cir. 2014), the applicable limitation period for Title IX claims is

also two years.

  The District asserts that Plaintiff Jenkins's federal claims are untimely because

they were raised over two years after they accrued. The District asserts that Jenkins's

claims accrued in August 2021 because she posted on Facebook that she first learned

about her daughter's abuse when FBI agents notified her in August 2021. Motion at 12.

The SAC makes no mention of Plaintiff Jenkins's meeting with the FBI or her Facebook

post; thus, to support its argument, the District has attached the Facebook post as an

exhibit to the Motion. [Doc. No. 48-1]. Because it argues that Jenkins's claim accrued in

August 2021, the District contends that "Jenkins was required to file this action against

District by no later than by the end of August 2023, not November 2023 when she

actually filed this action against District." Motion at 14.

  This argument is unavailing. The District relies on information outside the

pleadings—namely, Jenkins's Facebook post—to assert that her federal claims accrued in

August 2021. "But '[a] statute of limitations defense may be appropriately resolved on a

Rule 12(b) motion when *the dates given in the complaint* make clear that the right sued

upon has been extinguished.'" *Herrera v. City of Espanola*, 32 F.4th 980, 991 (10th Cir.

2022) (alteration in original) (emphasis added) (quoting *Sierra Club v. Okla. Gas & Elec.*

*Co.*, 816 F.3d 666, 671 (10th Cir. 2016)). The SAC does not allege when Plaintiff Jenkins

knew or had reason to know of the abuse her daughter suffered. *Cf. Baker v. Bd. of*

*Regents*, 991 F.2d 628, 632 (10th Cir. 1993) ("A civil rights action accrues when the

plaintiff knows or has reason to know of the injury which is the basis of the action."). It is

not Plaintiffs' burden to allege such facts; the statute of limitations is an affirmative

defense, and a "plaintiff need not anticipate in the complaint an affirmative defense that

may be raised by the defendant." *Fernandez v. Clean House, LLC*, 883 F.3d 1296, 1299

(10th Cir. 2018).

Thus, because it is not clear from the face of the SAC that Plaintiff Jenkins's

federal claims are time-barred, the District's statute of limitations defense fails at the

pleading stage.

### B.    Plaintiffs have not stated a municipal liability claim under the Equal Protection or Due Process Clauses of the Fourteenth Amendment.

Plaintiffs have sued the District under 42 U.S.C. § 1983, alleging that "[t]he

inadequate policies and resulting failures of the School District allowed Defendant Henke

to violate Plaintiffs' 14th Amendment rights to Due Process and Equal Protection." SAC

¶ 59. The District moves to dismiss this claim, arguing that "[t]here are no facts alleged to

show District was on notice of any inappropriate conduct by Henke or that the alleged

victims—or their families—reported any suspicious behavior of Henke's to District."

Motion at 17. Further, the District contends, the SAC "does not specifically allege that

8

the actions/inactions of District caused the alleged harm to H.L.T. or P.J. nor does it allege that District had actual notice of the actions of Henke." *Id.* at 17–18.

Section 1983 provides a cause of action against any "person" who, under color of state law, deprives another person of their constitutional or civil rights. 42 U.S.C. § 1983. Like a municipality, a public school district is a suable "person" under § 1983, but it cannot "be held liable for the actions of its employees under the theory of respondeat superior." *Seamons v. Snow*, 206 F.3d 1021, 1029 (10th Cir. 2000) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)); *see also City of Canton v. Harris*, 489 U.S. 378, 385 (1989) ("[A] municipality can be found liable under § 1983 only where the municipality *itself* causes the constitutional violation at issue. *Respondeat superior* or vicarious liability will not attach under § 1983." (citation omitted)).

To state a § 1983 claim against a school district, "a plaintiff must allege (1) that the [district] had a policy or custom . . .; (2) that the [district] was deliberately indifferent to the obvious consequences of the policy; and (3) that the policy caused the plaintiff's constitutional injury." *Lee v. Poudre Sch. Dist. R-1*, 135 F.4th 924, 934 (10th Cir. 2025) (footnote and citations omitted) (applying *Monell* to a substantive due process claim against a school district under § 1983); *see also Murrell v. Sch. Dist. No. 1*, 186 F.3d 1238, 1249–50 (10th Cir. 1999) (applying *Monell* to an equal protection claim against a school district under § 1983).

The first element—that the district had an official policy or custom—"can take multiple forms." *Lee*, 135 F.4th at 934.

> A municipal policy or custom may take the form of (1) "a formal regulation or policy statement"; (2) an informal custom "amoun[ting] to 'a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law'"; (3) "the decisions of employees with final policymaking authority"; (4) "the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval"; or (5) the "failure to adequately train or supervise employees, so long as that failure results from 'deliberate indifference' to the injuries that may be caused."

*Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010) (quoting *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1189–90 (10th Cir. 2010)).

To satisfy the second element, Plaintiffs must plausibly allege that the District acted with deliberate indifference, which "is a stringent standard of fault, requiring [allegations] that a municipal actor disregarded a known or obvious consequence of his action." *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 410 (1997). "The deliberate indifference standard may be satisfied when the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm." *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998). Notice can either be shown by alleging "the existence of a pattern of tortious conduct" or that "a violation of federal rights is a 'highly predictable' or 'plainly obvious' consequence of a municipality's action or inaction." *Id.* at 1307–08 (quoting *Brown*, 520 U.S. at 409).

For the third element, causation, "it is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality." *Brown*, 520 U.S. at 404. Rather, "[t]he plaintiff must also demonstrate that, through its *deliberate* conduct, the

municipality was the 'moving force' behind the injury alleged." *Id.* In other words, a plaintiff "must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Id.* Where "the municipal policy or practice is itself not unconstitutional" because "the municipal liability claim is based upon inadequate training, supervision, [or] deficiencies in hiring," then "[t]he causation element is applied with especial rigor." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 770 (10th Cir. 2013) (quoting Martin A. Schwartz, *Section 1983 Litigation: Claims and Defenses* § 7.12 (2013)).

Regarding the first element, Plaintiffs point to three policies or customs that potentially provide the basis for their municipal liability claim. First, they allege that the District had an informal custom of "allow[ing] employees to be alone with special-needs children for extended periods of time." SAC ¶ 55. Second, they allege that the District "fail[ed] to implement and enforce internet safety policies to prevent sexual exploitation of students." *Id.* ¶ 64. Third, Plaintiffs allege that the District failed to "train and supervise employees with regard to how to identify and address sexual abuse of children, particularly the most vulnerable children, such as special-needs children and children unable to grasp and/or verbalize the nature of their abuse." *Id.*[5]

---

[5] The SAC additionally alleges that the District "denied the Plaintiffs the right to Due Process and Equal Protection of the Law by . . . [f]ailing to investigate Defendant Henke thoroughly and properly before any allegations of sexual abuse were raised." SAC ¶ 53(e). Neither party's briefing addresses this allegation in relation to Plaintiffs' § 1983 claim. Still, the Court notes that claims based on an alleged failure to investigate an employee before hiring them "pose the greatest risk that a municipality will be held liable for an injury that it did not cause." *Brown*, 520 U.S. at 415. Thus, "courts must take even greater care to adhere to stringent culpability and causation standards and carefully 'test

These allegations are insufficient to state a municipal liability claim against the District under the Equal Protection Clause. "A claim of municipal liability for sexual harassment [under the Equal Protection Clause] requires that the state employee's discriminatory conduct be representative of an official policy or custom of the institution" or "taken by an official with final policymaking authority." *Rost ex rel. K.C. v. Steamboat Springs RE-2 Sch. Dist.*, 511 F.3d 1114, 1124 (10th Cir. 2008). "In the absence of an official policy, a municipality may still be liable for the widespread and persistent practice of sexual harassment which constitutes a custom." *Id.* at 1125. However, the Tenth Circuit has held that where a supervisor "engaged in isolated and sporadic acts of sexual harassment directed at a few specific female members of his staff" and "[t]here is no indication that sexual harassment by others in the office was tolerated or occurred," that is insufficient to establish that a municipality had a persistent and widespread practice of sexual harassment constituting an informal custom. *Starrett v. Wadley*, 876 F.2d 808, 820 (10th Cir. 1989).

Here, there are no allegations that Defendant Henke's sexual harassment and abuse constituted a policy or custom of the District. The SAC does not allege that Defendant

---

the link' between the policymaker's hiring decision and the particular injury alleged." *Barney*, 143 F.3d at 1308 (citation omitted) (quoting *Brown*, 520 U.S. at 410). Here, although Plaintiffs allege that "Defendant Henke had a history of sexually abusing children with mental disabilities prior to being hired at Highland Park Elementary," SAC ¶ 45, they do not allege that there was any record of this abuse that the District ignored or neglected when hiring Defendant Henke. Thus, they have not alleged that, in light of Defendant Henke's record, the District knew he was highly likely to sexually abuse students if hired as a paraprofessional or teacher's aide.

Henke possessed final policymaking authority, nor are there any allegations suggesting that Henke's sexual abuse was somehow representative of an official policy of the District. Further, the SAC does not allege that Henke abused any students at the District other than P.J. and H.L.T., and there are no allegations that any other District employee was sexually harassing, abusing, or exploiting students. Thus, under *Starrett*, Plaintiffs have not alleged that the District had an informal custom of sexual harassment or abuse. Accordingly, Plaintiffs have not satisfied *Monell*'s first element as to their claim under the Equal Protection Clause, so they have failed to state an equal protection claim against the District under § 1983.

However, Plaintiffs' substantive due process claim is different in kind from their equal protection claim. Plaintiffs advance a state-created danger theory, which "indulges the legal fiction that an act of private violence may deprive the victim of th[e] constitutional guarantee[s]" of the Due Process Clause. *Gray v. Univ. of Colo. Hosp. Auth.*, 672 F.3d 909, 927 (10th Cir. 2012). "Before the fiction may operate, however, a state actor must create the danger or render the victim more vulnerable to the danger that occasions the deprivation of life, liberty, or property." *Id.* When assessing such a claim, "[t]he *danger* that the state actor creates or enhances must be differentiated from the *harm* that the private party inflicts."[6] *Id.* at 927–28. Thus, while the District cannot be

---

[6] Although the District does not challenge the issue in its Motion, *see* Motion at 19 n.2, the Tenth Circuit has held that this theory does not apply where a state actor is responsible for the harm. In *Gray*, the court explained that "[c]ourts simply need not indulge this legal fiction where a state actor, rather than a private individual, is directly responsible for causing the harm." 672 F.3d at 928. The plaintiffs in that case alleged that hospital staff negligently caused an epileptic patient's death because they left him

liable under the Equal Protection Clause because Plaintiffs have not alleged that the *harm* P.J. and H.L.T. suffered was attributable to a District policy or custom, the District could still be liable under a danger-creation theory for creating or enhancing the *danger* or threat of abuse P.J. and H.L.T. faced. Accordingly, the Court assumes without deciding that Plaintiffs have satisfied *Monell*'s first element as to their substantive due process claim.

Turning to the second element—deliberate indifference—Plaintiffs argue they have met this stringent standard by alleging that "the risk of being sexually abused while at Highland Park Elementary School" was "obvious or known to the School District, particularly when multiple students were abused." SAC ¶¶ 66–67. According to Plaintiffs, the District knew of this risk "regardless of whether it knew that Henke in particular was abusing H.L.T. and P.J." Response at 18. Plaintiffs further allege that the District "knew that its employees would need to monitor, identify, and report suspected child abuse," "that training on these matters would have helped teachers and aides with the task of spotting and addressing suspected child abuse," and "that a failure to identify and report such child abuse would lead to the deprivation of these students' constitutional rights."

---

unattended and he suffered a seizure. *Id.* at 911. Because the complaint alleged that the hospital staff members who were "responsible for monitoring decedent were 'employees and/or agents' of Defendant hospital acting 'under color of state law,'" the Tenth Circuit concluded that the plaintiffs failed to state a claim under a state-created danger theory because the alleged conduct was "neither private nor violent." *Id.* at 930. Here, Plaintiffs allege that Henke was an employee of the District at the time of the abuse and that he abused P.J. and H.L.T. at school during school hours, *see* SAC ¶¶ 4, 12, 16, but Plaintiffs have not alleged federal constitutional claims against Henke under § 1983.

SAC ¶ 58; *see also* Response at 18. Further, Plaintiffs argue that the District had "'actual or constructive notice' of Henke's misconduct" because of the changes in P.J.'s behavior after Henke started working in her classroom. Response at 19.

The Court is not persuaded and concludes that Plaintiffs have not sufficiently alleged that the District was deliberately indifferent to any obvious unconstitutional consequences of its policies and customs. The SAC does not plausibly allege that the District had actual or constructive notice that its policies or customs were substantially certain to result in a constitutional violation. Plaintiffs allege a pattern of tortious conduct by alleging that Henke repeatedly sexually abused P.J. and H.L.T. *See* SAC ¶ 16. But there are no allegations suggesting that the District had notice of this pattern of abuse until Henke's arrest. It is an inferential step too far to infer that the District knew that Henke was abusing P.J. and H.L.T. because P.J began acting out at home and at school. Even assuming district officials, if properly trained, "*would* have seen these behavioral changes as a cry for help" and "*would* have properly investigated," SAC ¶ 34 (emphasis added), such counterfactuals are not enough to satisfy the stringent standard of deliberate indifference.

The nature of Henke's abuse—that he sexually abused P.J. and H.L.T. while "alone and unsupervised with disabled students for extended periods," SAC ¶ 26—makes it difficult to show that the District had notice of the abuse. Plaintiffs cursorily allege that Henke said that "his co-workers were present and witnessed 'inappropriate behavior . . . going on.'" *Id.* ¶ 35. But the SAC does not allege who these co-workers

were or what behavior they witnessed. Without more, the Court cannot conclude from this one-line allegation that the District had notice of Henke's abuse.

In addition, Plaintiffs have not plausibly alleged that a violation of P.J. and H.L.T.'s right to be free from state-created danger was a highly predictable or plainly obvious consequence of the District's policies or customs. It is not plainly obvious that allowing paraprofessionals to be alone with special-needs students for extended periods of time would expose those students to danger in a manner that violates their constitutional rights. Nor is such exposure to state-created danger a highly predictable consequence of the District's allegedly inadequate internet safety policies or its alleged failure to train employees on how to identify signs of child sexual abuse. These allegedly deficient policies and customs may show that the District neglected the safety of its students, but deliberate indifference is a substantially higher bar than negligence. The SAC does not allege that the District knew of and disregarded an obvious risk that its students' constitutional rights would be violated, so Plaintiffs have not plausibly alleged that the District acted with deliberate indifference.

Moreover, the SAC does not sufficiently allege the third element of a *Monell* claim, causation. Plaintiffs have not alleged that, through its deliberate conduct, the District was the moving force behind P.J. and H.L.T.'s injuries. The District's alleged custom of allowing paraprofessionals to spend extended amounts of unsupervised time with disabled students may well be "in harmony" with the harm P.J. and H.L.T. suffered. *See Lee v. Poudre Sch. Dist. R-1*, 135 F.4th 924, 935 (10th Cir. 2025). Similarly, an inadequate internet safety policy and insufficient training on how to identify child sexual

abuse could plausibly contribute to such harm. But under the Tenth Circuit's "rigorous causation standard," *id.*, such allegations are not enough to establish a direct causal link between the District's customs and policies and the constitutional deprivation P.J. and H.L.T. allegedly suffered. Without plausible allegations of direct causation, Plaintiffs' municipal liability claim must fail.

In short, Plaintiffs have not plausibly alleged that Defendant Henke's abuse was representative of an official policy or custom, so they have not stated a *Monell* claim against the District under the Equal Protection Clause of the Fourteenth Amendment. Further, Plaintiffs have not sufficiently alleged that the District was deliberately indifferent to any obvious unconstitutional consequences of its policies or customs, nor have they alleged that the District's affirmative conduct was the moving force behind P.J. and H.L.T.'s injuries. Thus, they also have not stated a claim under the Due Process Clause of the Fourteenth Amendment. Plaintiffs have therefore failed to state a municipal liability claim against the District under the Fourteenth Amendment, so the Court dismisses Plaintiffs' § 1983 claim without prejudice.

**C.    Plaintiffs have not stated a claim under Title IX.**

Plaintiffs have sued the District under Title IX, alleging that the District's "failure to promptly and appropriately respond to the sexual misconduct resulted in H.L.T. and P.J., on the basis of their sex, being excluded from participation in, being denied the benefit of, and/or being subjected to discrimination" in the District's education program. SAC ¶ 82. The District moves to dismiss this claim because the SAC does not allege that

the District had actual notice that H.L.T. or P.J. were being sexually harassed or abused. Motion at 22.

Under Title IX, with limited exceptions that are not applicable here, "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). "[W]hen a teacher sexually harasses and abuses a student," that harassment and abuse constitute discrimination on the basis of sex that is actionable under Title IX. *Franklin v. Gwinnett Cnty. Pub. Schs.*, 503 U.S. 60, 75 (1992). "Title IX is enforceable through an implied private right of action for which money damages are available." *Murrell v. Sch. Dist. No. 1*, 186 F.3d 1238, 1245–46 (10th Cir. 1999) (citing *Davis ex rel. LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 639 (1999)). But because respondeat superior liability "would 'frustrate the purposes' of Title IX," *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 285 (1998), "a recipient of federal funds may be liable in damages under Title IX only for its own misconduct," *Davis*, 526 U.S. at 640.

Thus, to state a claim against a school district under Title IX, a plaintiff must allege four elements. "She must allege that the district (1) had actual knowledge of, and (2) was deliberately indifferent to (3) harassment that was so severe, pervasive and objectively offensive that it (4) deprived the victim of access to the educational benefits or opportunities provided by the school." *Murrell*, 186 F.3d at 1246. For the first two prongs of this analysis, a plaintiff must allege that "an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the

recipient's behalf has actual knowledge of discrimination in the recipient's programs and fails adequately to respond." *Gebser*, 524 U.S. at 290. "The premise, in other words, is an official decision by the recipient not to remedy the violation," which "finds a rough parallel in the standard of deliberate indifference" for municipal liability claims under § 1983. *Id.* at 290–91. In *Gebser*, the Supreme Court declined to impose liability "based on a theory of constructive notice, *i.e.*, where the district knew or 'should have known' about harassment but failed to uncover and eliminate it." *Id.* at 282. The Court reasoned that such a standard would be at odds with the "basic objective" of Title IX, which is "to avoid diverting education funding from beneficial uses where a recipient was unaware of discrimination in its programs and is willing to institute prompt corrective measures." *Id.* at 289. Requiring a showing of actual knowledge of discrimination and deliberate indifference to it ensures that school districts are liable only for their own official decisions, not for their employees' independent actions. *Id.* at 290–91.

Here, Plaintiffs have not alleged that a District official with requisite control over the situation had actual knowledge that Defendant Henke was sexually abusing H.L.T. or P.J. The SAC's allegations that P.J.'s behavior changed after Henke started working in her classroom do not show that any District official had actual knowledge of the abuse. Plaintiffs allege that "[a] person properly trained in how to address and communicate with non-verbal students with learning disabilities would have seen these behavioral changes as a cry for help" and "would have properly investigated," SAC ¶ 34, but Plaintiffs do not allege that any District official had the requisite training, observed P.J.'s behavioral changes, and subsequently investigated. The SAC does not allege that the

District received any complaints of sexual abuse or was otherwise informed of the abuse prior to Henke's arrest. Without more, the allegations in the SAC do not allow the Court to draw the reasonable inference that the District had actual knowledge of P.J. or H.L.T.'s abuse.

Further, although the SAC alleges that Henke said "that his co-workers were present and witnessed 'inappropriate behavior . . . going on,'" SAC ¶ 35, the SAC does not provide any details regarding who these co-workers were or what they saw. Thus, the Court cannot determine from the face of the SAC whether any of these co-workers had authority to address the abuse and institute corrective measures. If these co-workers lacked such authority, the SAC does not allege that they notified an official who had authority to address the abuse.

Absent any plausible allegations that the District had actual notice of P.J. and H.L.T.'s abuse, Plaintiffs' Title IX claim must fail. Accordingly, the Court grants the District's motion to dismiss Plaintiffs' Title IX claim, which is dismissed without prejudice.[7]

---

[7] In their Response, Plaintiffs state that they "should be given the opportunity to amend their Complaint to cure any deficiency." Response at 30. But a plaintiff cannot seek leave to amend a complaint in a response brief. *See* Fed. R. Civ. P. 7(b)(1) ("A request for a court order must be made by motion."); LCvR7.1(c) ("A response to a motion may not also include a motion . . . made by the responding party."); LCvR15.1 (explaining that a party moving to amend a pleading must attach the proposed pleading as an exhibit to the motion); *see also Albers v. Bd. of Cnty. Comm'rs of Jefferson Cnty.*, 771 F.3d 697, 706 (10th Cir. 2014) ("We have recognized the importance of Fed. R. Civ. P. 7(b) and have held that normally a court need not grant leave to amend when a party fails to file a formal motion." (quoting *Calderon v. Kan. Dep't of Soc. & Rehab. Servs.*, 181 F.3d 1180, 1186 (10th Cir. 1999))). Moreover, Plaintiffs have already been given the

**D.    The Court declines to exercise supplemental jurisdiction over Plaintiffs' remaining state-law claims.**

Plaintiffs' remaining claims against the District and Defendant Henke all arise under state law for negligence and intentional torts. As Plaintiffs explain, their "negligence claims are pled in the alternative to Plaintiffs' federal claims. In other words: either the District knew (had notice of) Henke's abuse and did nothing, in which case District was deliberately indifferent; or the District should have known but did not, in which case District was negligent." Response at 29 n.10 (citing Fed. R. Civ. P. 8(d)(2)–(3)).

The District argues for dismissal of these claims in part because Plaintiffs have failed to state a claim and in part because they have failed to comply with the GTCA. Specifically, regarding the District's GTCA arguments, the District asserts that Plaintiffs have not alleged compliance with the GTCA's notice requirement, Plaintiff Jenkins has altogether failed to comply with the notice requirement, and even if these claims "survive the GTCA notice deficiencies, District is still immune from liability arising from discretionary functions." Motion at 10–13, 22–25.[8]

"When a federal district court has original jurisdiction over a civil cause of action, [28 U.S.C.] § 1367 determines whether it may exercise supplemental jurisdiction

_____

opportunity to amend their complaint twice following motions to dismiss. *See* [Doc. Nos. 3, 11, 15, 22, 32, 33, 34].

[8] The District also contends it cannot be liable for Defendant Henke's intentional torts, *see* Motion at 29, but Plaintiffs are not bringing the intentional tort claims against the District, *see* Response at 30.

over other claims that do not independently come within its jurisdiction, but that form part of the same Article III 'case or controversy.'" *Jinks v. Richland Cnty.*, 538 U.S. 456, 458 (2003). Section 1367(a) provides:

> Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367(a).

But simply because a district court may exercise supplemental jurisdiction does not mean that it should. Indeed, § 1367(c) "describe[s] situations in which a federal court may or must decline to exercise supplemental jurisdiction." *Jinks*, 538 U.S. at 459. Specifically, § 1367(c) states:

> The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—
> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).

In any of these situations, "federal law is not where the real action is." *Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 32 (2025). "So although supplemental jurisdiction persists, the district court need not exercise it: Instead, the court may (and indeed, ordinarily should) kick the case to state court." *Id.*; *see also Barnett v. Hall, Estill,*

*Hardwick, Gable, Golden & Nelson, P.C.*, 956 F.3d 1228, 1238 (10th Cir. 2020) (explaining that "[t]he Supreme Court has encouraged the practice of dismissing state claims or remanding them to state court when the federal claims to which they are supplemental have dropped out before trial," and the Tenth Circuit "has followed suit"). "[A] district court's deferral to a state court rather than retaining and disposing of state law claims itself" promotes principles of "judicial economy, fairness, convenience and comity." *Ball v. Renner*, 54 F.3d 664, 669 (10th Cir. 1995).

However, while declining to exercise supplemental jurisdiction is the preferred practice, "compelling reasons to the contrary" may suggest that a federal court should exercise its "discretion to try state claims in the absence of any triable federal claims." *Thatcher Enters. v. Cache Cnty. Corp.*, 902 F.2d 1472, 1478 (10th Cir. 1990). Courts should exercise this discretion if, "given the nature and extent of pretrial proceedings, judicial economy, convenience, and fairness would be served by retaining jurisdiction." *Id.*

Upon careful consideration, the Court declines to exercise supplemental jurisdiction over Plaintiffs' state-law claims under § 1367(c). The Court has dismissed both federal claims over which it has original jurisdiction. There are no unique, compelling circumstances that would lead the Court to try Plaintiffs' state claims in the absence of any federal claims. Many of the District's arguments for dismissal turn on application of the GTCA, and Oklahoma's courts are best poised to interpret and apply a statute controlling the scope and extent of the state's waiver of sovereign immunity. *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("Needless decisions of

23

state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law."). The Court is reluctant to engage in unnecessary determinations of state law when it otherwise has no original jurisdiction, especially when such determinations involve the scope of the state's waiver of governmental immunity. *See* 28 U.S.C. § 1367(c)(1), (c)(3).

Because this case was removed from state court, the Court may "relinquish jurisdiction over the case" either by dismissing the state-law claims without prejudice or remanding the case to state court. *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 351 (1988). Remand rather than dismissal is the favored path when it "will best accommodate the values of economy, convenience, fairness, and comity." *Id.* "Any time a district court dismisses, rather than remands, a removed case involving pendent claims, the parties will have to refile their papers in state court, at some expense of time and money," and "the state court will have to reprocess the case," which "will involve similar costs." *Id.* at 353. Thus, dismissing state-law claims instead of remanding them will often "increase both the expense and the time involved in enforcing state law." *Id.*; *see also* 13D *Wright & Miller's Federal Practice & Procedure* § 3567.3 (3d ed. 2025) ("[I]n a case removed from state to federal court, the federal judge who declines supplemental jurisdiction under § 1367(c) should remand the supplemental claims to state court . . . .").

Under the circumstances of this case, the Court concludes that an order of remand rather than dismissal best promotes the values of economy, convenience, fairness, and comity. Accordingly, Plaintiffs' state-law claims against the District and Defendant Henke

will be remanded to the state court from which they were removed, which is the District Court of Oklahoma County, State of Oklahoma.

## IV.    **CONCLUSION**

For these reasons, the Court GRANTS IN PART the District's Motion to Dismiss Plaintiffs' Second Amended Complaint [Doc. No. 48]. The Court DISMISSES Plaintiffs' federal claims without prejudice. The Court declines to exercise supplemental jurisdiction over Plaintiffs' remaining state-law claims, which are REMANDED to the District Court of Oklahoma County, State of Oklahoma. A separate judgment will follow.

IT IS SO ORDERED this 16th day of July 2025.

_____
JODI W. DISHMAN
UNITED STATES DISTRICT JUDGE